Michael KIRTON, Individually and as next friend of Terri Kirton, a minor, Plaintiff and Appellant,

v.

WILLIAMS ELECTRIC COOPERATIVE, INC., a corporation, Defendant and Appellee.

Civ. No. 9423.

Supreme Court of North Dakota.

May 3, 1978.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for plaintiff and appellant; argued by Mark L. Stenehjem, Williston.

McIntee & Whisenand, Williston, for defendant and appellee; argued by Frederick E. Whisenand, Jr., Williston.

ERICKSTAD, Chief Justice.

This is an appeal by Michael Kirton, individually and as next friend of Terri Kirton, a minor, plaintiff and appellant, from a judgment of the Williams County District Court. The summary judgment granted by the district court dismissed Kirton's wrongful death action against Williams Electric Cooperative, Inc., a corporation, defendant and appellee (hereinafter Williams Electric), for the death of Elizabeth Kirton.

Elizabeth Kirton was electrocuted on August 16, 1976, while assisting a neighbor lady install a citizen's band radio antenna. The antenna apparently came into contact with an uninsulated 7,200 volt Williams Electric power line which passed overhead. In October 1976, Kirton commenced this action against Williams Electric based on the grounds of negligence and the maintenance of a nuisance. In August 1977, Williams Electric filed a motion for summary judgment and a hearing was held on this motion on October 26, 1977. The motion was granted by the district court and judgment was entered on October 25, 1977, dismissing the complaint.

The district court, in its order granting defendant summary judgment, stated its reasons for granting the motion. The court first found no genuine issue of any material fact and then said:

"The Court has concluded that the defendant in these proceedings, in the absence of special circumstances not present in this case, was not required to anticipate that a person would negligently attempt to erect a CB radio antenna in such a manner that it could come in contact with the electric power transmission line of the defendant where such electric power transmission line was in good condition and not in violation of any minimum construction standards or statutory requirements; the Court further concludes that there was no duty or obligation on the part of the defendant to the plaintiff's decedent to avoid the injury complained of, nor is there any duty on the part of the defendant to anticipate that the plaintiff's decedent would assist in the installation of a CB radio antenna next to an electric power transmission line on a windy day; and the Court reaches the further conclusion that the maintenance of the electric power transmission line by the defendant at the point and place where the alleged injury took place did not constitute a private or public nuisance nor was there any legal obligation on the part of the defendant to insulate its electric power transmission line at said

point and place; that in reaching its decision herein, the Court makes specific reference to the decisions in *Clinton v. Commonwealth Edison Company*, 344 N.E.2d 509 (Ill.1976) [correct citation: 36 Ill. App.3d 1064, 344 N.E.2d 509 (1976)], and *Moum v. Maercklein*, 201 N.W.2d 399 (N.D.1972)."

In *Clinton v. Commonwealth Edison Company*, 36 Ill.App.3d 1064, 344 N.E.2d 509 (1976), relied on by the district court, a 15-year-old boy was electrocuted when a 25 foot aluminum pole he was holding apparently came into contact with a 7,200 volt electrical line. The circuit court granted a motion for a directed verdict and this verdict was upheld by the appellate court. The appellate court held that there was no duty owed to the boy by the defendant power company because the occurrence was not reasonably foreseeable.

In *Moum v. Maercklein*, 201 N.W.2d 399 (N.D.1972), the other case referred to in the district court's order, we reversed a judgment of a district court based on a jury verdict finding negligence and assessing damages. In that case, the Soo Line Railway Company had called an employee to report to work when it was snowing and driving conditions were hazardous. The employee en route to work attempted to pass a vehicle and collided with a vehicle heading in the opposite direction. In reversing the judgment, we held that the unforeseen negligence of the employee in attempting to pass a vehicle when visibility was very poor made the defendant's negligence, if any, in calling the employee to work, a remote and not a proximate cause of the injury. *Moum* is distinguishable from the case now before us in three respects: (1) the fact situations are different; (2) we were discussing proximate cause in *Moum* rather than duty; (3) *Moum* reached

this court after a full trial on the merits rather than after summary judgment.

In this case, the court concluded that Williams Electric owed no duty to protect Elizabeth Kirton from injury under the circumstances. This lack of duty was based on the trial court's determination that under the circumstances Williams Electric could not reasonably have anticipated that someone would come into contact with the power line at that location. On this basis, the district court dismissed the negligence ground of the complaint.

The first issue before us, then, is whether or not the district court properly granted the summary judgment motion dismissing the negligence ground of the complaint on the basis of its finding that there was no duty owed by Williams Electric to protect Elizabeth Kirton from injury.

This court, in *Olson v. Cass County Electric Cooperative, Inc.*, 94 N.W.2d 506 (N.D.1959), dealt with the issue of the duty of an electric power distributor. Syllabus ¶¶ 3 and 4 of that opinion read:

"3. While a distributor of high voltage electricity is not an insurer it does have the duty in erecting and maintaining its transmission lines to exercise care commensurate with the dangers involved.

"4. Care commensurate with the danger involved in the transmission and distribution of high voltage electricity includes reasonable inspection of transmission lines. The duty to inspect is not confined to areas of dense population but applies as well to transmission lines over agricultural land." 94 N.W.2d at 508.

An electric power distributor in North Dakota, therefore, must exercise care commensurate with the dangers involved.[1] It must specifically make a reasonable inspection of its transmission lines.

---

1. In *Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners*, 122 N.W.2d 140 (N.D.1963), we quoted with approval the following from 65 C.J.S. Negligence § 11, p. 396.

"'The duty of care is commensurate with the danger present in a situation or incident to an operation or instrumentality, and a person engaging in an act which the circumstances indicate may be dangerous must take

all the care which prudence would suggest to avoid injury. The greater the danger the greater is the care required, so that a very high degree of danger calls for a very high degree of care, which, however, amounts merely to ordinary care in view of the situation and circumstances. . . .'" 122 N.W.2d at 146.

There have been many cases in other jurisdictions which have dealt with other duties of a distributor of electric power. Of particular importance to this case is the duty placed on a distributor of electric power by other jurisdictions to insulate its transmission lines or to isolate them effectively whenever it may be reasonably anticipated that others may come into close proximity to such lines. Stated in another way, a distributor of electric power has a duty to take reasonable precautions whenever it may be reasonably anticipated that persons may come into contact with its transmission lines. *Clinton v. Commonwealth Edison Company, supra,* 36 Ill. App.3d at 1068, 344 N.E.2d at 513; *Sonier v. Louisiana Power & Light Co.,* 293 So.2d 24, 26 (La.App. 1 Cir. 1974); *Mississippi Power & Light Company v. Shepard,* 285 So.2d 725, 729 (Miss.1973); *Donovan v. Union Electric Company,* 454 S.W.2d 623, 626 (Mo.App.1970); *Weisser v. Otter Tail Power Company,* 318 F.2d 375, 377 (8th Cir. 1963). It is not necessary, though, that the power company should anticipate the exact or particular injury or the exact or particular manner in which it may occur. *Mississippi Power & Light Company v. Shepard, supra* at 729; *Donovan v. Union Electric Company, supra* at 626.

We agree that an electric power distributor has a duty to insulate or isolate its transmission lines or at least to reasonably warn of the dangers whenever it can be reasonably anticipated that persons may come into contact with the lines and be injured. In other words, distributors of electric power must take precautions commensurate with the dangers involved whenever it is to be reasonably anticipated that persons may come into contact with its transmission lines.

The district court below concluded that the injury involved in this case was not one that could have been reasonably anticipated by the power company, and therefore held that there was no duty under the circumstances of this case. Kirton contends on this appeal that whether or not the injury in this case was foreseeable or one to be anticipated is a question of fact for the jury to determine.

In *Clinton v. Commonwealth Edison Company, supra,* 36 Ill.App.3d at 1068, 344 N.E.2d at 513, the court said that the determination of whether or not there is a duty is a question of law and that foreseeability is one of the elements the court must consider. Courts in several other jurisdictions, though, have stated that whether or not an injury was foreseeable or to be anticipated is a question of fact for the jury. *Sonier v. Louisiana Power & Light Co., supra* at 26; *Mississippi Power & Light Company v. Shepard, supra* at 739; *Delta Electric Power Association v. Burton,* 240 Miss. 209, 126 So.2d 258, 261 (1961).

We agree with the courts that have held that the question of whether or not the injury was one that could have reasonably been anticipated is a question of fact for the jury. That is not to say, however, that a court may not decide that issue as a matter of law where the facts are such that reasonable men could not differ. *Georgia Power Co. v. Williams,* 132 Ga.App. 874, 877, 209 S.E.2d 648, 650 (1974); *Donovan v. Union Electric Company, supra* at 626–27; *Weisser v. Otter Tail Power Company, supra* at 376, 378.

Whether or not the district court properly ruled, as a matter of law, that the injury was not reasonable foreseeable, depends upon the circumstances of this particular case.

One of the most important considerations in this case is that the court based its conclusions on the pleadings, affidavits and other papers and documents filed in support and in opposition to the motion for summary judgment. The district court did not, therefore, make its decision after hearing all the evidence as it may have been brought out at the trial.

In *Johnson v. American Motors Corporation,* 225 N.W.2d 57 (N.D.1974), we quoted with approval this statement from 10

Wright & Miller, Federal Practice and Procedure:

> " 'Although a motion for summary judgment under Rule 56 may be made in any civil action, it is not commonly interposed, and even less frequently granted, in negligence actions.' "  10 Wright & Miller, Federal Practice & Procedure: Civil § 2729, p. 559.

We also said, in syllabus ¶ 3 of *Johnson, supra,* that:

> "3.  Where questions of negligence, contributory negligence, assumption of risk, proximate cause, and the standard of the reasonable man are in issue, even if there is no dispute as to the evidentiary facts, if there is any doubt as to the existence of a genuine issue as to a material fact, or if the evidence is subject to conflicting interpretations, there is a jury question and summary judgment is improper."  225 N.W.2d at 58.

In *Wolff v. Light,* 156 N.W.2d 175 (N.D. 1968), we said in syllabus ¶ 2:

> "2.  In cases involving issues of negligence, contributory negligence, assumption of risk and proximate cause, where the standard of the reasonable man must be applied to conflicting testimony, and even where there is no dispute as to the facts, *where inferences may be reasonably drawn from the evidence that indicate the presence of a genuine issue of fact,* summary judgment should not be granted, but these issues should be tried in the usual manner."  [Emphasis added.] 156 N.W.2d at 175–76.

The Eighth Circuit Court of Appeals has expressed its caution in regard to summary judgment in this way:  "If there exists the slightest doubt as to a factual dispute or 'genuine issue of fact,' summary judgment should be denied."  *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.,* 395 F.2d 388, 389 (8th Cir. 1968).

■ In light of the above discussion of summary judgment and the evidence contained in the affidavits, depositions, and other documents which the district court had before it, we conclude that this is not a proper case for summary judgment.

It is true that the basic facts as to what occurred are not in dispute.  Williams Electric maintained a 7,200 volt transmission line which passed directly over the top of some of the trailers in the Red Barn Trailer Court, which court was built after the line was erected.  This line, according to the affidavits before the district court, was in compliance with the standards of the National Electrical Safety Code, and not in violation of any State statute or regulation concerning the maintenance of power lines in North Dakota.  The power company also did have an easement which allowed the placement of the transmission line in that area.  It did not, however, place any warning signs in the area of the Red Barn Trailer Court, nor did it ever warn the Kirtons of the dangers connected with the transmission line.

It is also not disputed that Elizabeth Kirton was electrocuted when she was assisting a neighbor lady install a citizens band radio antenna near the power line in the trailer court.  According to the affidavits before the district court, Mrs. Kirton and her neighbor were standing almost directly under the transmission line when attempting to install the antenna.  The 7,200 volt line was 26 feet above the ground at its lowest point and the antenna was of a slightly greater height.

However, there are some facts which we believe are material that are in dispute.  There is a dispute over whether or not the owner and operator of the trailer court had warned Elizabeth Kirton of the dangers connected with the power line.  In the affidavit of Joseph Babella, the owner of the trailer court, Babella said that he warned Elizabeth Kirton several times, sometimes in the presence of Michael Kirton.  In Kirton's deposition, he denies that his wife was warned in his presence, and states that he does not know whether she was warned outside of his presence.

There is also a dispute over whether or not Williams Electric had, or should have

had, notice of the existence of other antennae in the area of the Red Barn Trailer Court. Kirton states that he had installed a 17 foot citizens band radio antenna on a 40 foot tower in a vacant lot to the north of his mobile home in January 1976 which, if it had fallen in the direction of the transmission line, would have hit it. He also says that in the spring he took this antenna down and installed a different antenna on his mobile home which, when attached, reached 31 feet above the ground. This second antenna Kirton said, would not have contacted the transmission line if it had fallen. He also said there were other antennae in the area which Williams Electric should have been cognizant of.

In the affidavit of Raymond Hughes, who is a line superintendent for Williams Electric, Hughes said that he noticed a CB antenna in the Red Bar Trailer Court in July of 1976 and that he ascertained that the antenna was outside of the falling distance of the transmission line.

In his affidavit, Duane Landes, an employee of Williams Electric whose duties included reading the meter in the Red Barn Trailer Court, said he was aware of the existence of certain antennae in or about the Red Barn Trailer Court prior to August 16, 1976. He further said he never saw an antenna in the trailer court higher than the power line in the proximity of the power line.

We think that disputes over these facts and the varying inferences which could be drawn from the facts not in dispute are relevant in determining whether or not Williams Electric should have anticipated the injury which occurred and in determining the comparative negligence of Williams Electric and Elizabeth Kirton.

It cannot be said that reasonable men could not differ on the inferences that could be drawn from the undisputed facts in this case. For example, it has not been disputed that the power line in question was in compliance with the provisions of the National Electrical Safety Code. The provisions in the National Electrical Safety Code only give the minimum allowable standards, however, and compliance with those provisions is considered only evidence tending to show due care and thus compliance is not determinative of the question of negligence. *Miner v. Long Island Lighting Company*, 40 N.Y.2d 372, 380–81, 386 N.Y. S.2d 842, 847, 353 N.E.2d 805, 810 (1976); *Clinton v. Commonwealth Edison Company*, *supra* 36 Ill.App.3d at 1070, 344 N.E.2d at 515; *Burk v. Missouri Power & Light Company*, 420 S.W.2d 274, 278 (Mo.1967). Reasonable men may differ on whether or not Williams Electric was negligent under the circumstances of this case, notwithstanding the compliance with the provisions of the National Electrical Safety Code.

We conclude, therefore, that the district court improperly granted the motion for summary judgment, dismissing the negligence ground of Kirton's complaint.

The second issue before us is whether or not the district court properly granted the summary judgment motion dismissing the nuisance ground of Kirton's complaint.

The court, in its order granting defendant summary judgment, said:

" . . . the maintenance of the electric power transmission line by the defendant at the point and place where the alleged injury took place did not constitute a private or public nuisance . . ."

At oral argument before this court, neither party discussed the nuisance ground. In their briefs, neither party, except for encyclopedia references, cited any authority holding that the maintenance of an electrical transmission line was or was not a nuisance. Instead, the briefs consisted basically of references to the code and generally to the law of nuisance.

We believe that under these circumstances, and especially in light of the factual disputes and differing inferences which may be drawn from the undisputed facts

previously discussed which may affect the question of the existence of a nuisance, it would be premature for us to rule as a matter of law that a nuisance did or did not exist in this case.

We therefore remand this case to the district court for trial on the merits on both the negligence and nuisance grounds of the complaint. To avoid a possible problem, should this case again be appealed, of determining the basis on which the jury reached its verdict, it is suggested that the jury be instructed to specify on what grounds it relies if it finds in favor of the plaintiff.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.